# HOPKINS *v.* CLEMSON AGRICULTURAL ·COL-LEGE OF SOUTH CAROLINA.

## ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

No. 70. Submitted December 7, 1910; ordered for reargument January 30, 1911; resubmitted March 15, 1911.—Decided May 29, 1911.

With the exception named in the constitution every State has absolute immunity from suit; and the Eleventh Amendment applies not only where the State is actually named as a party but where the suit is really against it although nominally against one of its officers.

Immunity from suit is a high attribute of soveriegnty and a prerogative of the State itself which cannot be availed of by public agents when sued for their own torts.

Neither a State nor an individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator; in such a case the law of agency has no application and the individual is liable to suit and injunction.

While the State as a sovereign is not subject to suit, cannot be enjoined, and the State's officers cannot be restrained from enforcing the State's laws or held liable for consequences of obedience thereto, a void law is neither a law or command but a nullity conferring no authority and affording no protection or immunity from suit.

Neither public corporations nor political subdivisions are clothed with the immunity from suit which belongs to the State alone; and while they may be relieved from responsibility to a wider degree than individuals would be they must make the defense and cannot rely on immunity.

In this case *held* that an agricultural college corporation was not such an agent of the State as to be immune under the Eleventh Amendment from suit for damages caused by erection of a dyke and consequent overflow of plaintiff's property; but also held that as the dyke was on property belonging to the State, the State would be a necessary party to the suit in order to decree removal, and in the absence of consent to be sued the court had no jurisdiction to decree removal.

Although parties erecting a dyke on property belonging to the State

may not, under the Eleventh Amendment, be immune from suit, the State is a necessary party to a suit to remove the dyke and it is beyond the jurisdiction of the court to make a decree to that effect.

Where a suit is for damages caused by erection of a dyke and for removal of the dyke the prayer for removal can be stricken out without depriving the court of jurisdiction to hear and determine the prayer for damages.

77 So. Car. 12, reversed.

In his complaint the plaintiff alleged that he owned a valuable body of fertile bottom lands, on the west side of the Seneca River, on which he had raised large crops from the time of purchasing the farm in 1880 until 1895, when the defendant, by its trustees, erected and maintained a high embankment on the eastern side of the river. This dyke was to protect the lands of the college from overflow, but its construction so narrowed the channel of the river that it caused the rapid current of the stream in time of high water to flow across the lands of plaintiff, whereby the natural bank had been destroyed, the rich soil had been washed away, and his property practically ruined for agricultural purposes, and "during the period aforesaid said injury has been and still is continuous from day to day and year to year." He prayed for judgment for $8,000; that the defendant be required to abate and remove the dyke and restore the condition prevailing prior to its construction and for general relief.

The defendant denied all the allegations of the complaint and alleged that the College had no title to the land, or any other property in connection with the establishment and maintenance of the institution; that the construction of the dyke was authorized by the State and had been built by the College, as a public agent, on land the title and possession of which was in the State. It therefore prayed that the complaint be dismissed.

By stipulation the case was heard solely on the question of jurisdiction. Evidence was introduced showing that

by his will, probated April 20, 1888, Thomas G. Clemson left personal property and the "Fort Hill" place, consisting of 814 acres, providing that whenever the State of South Carolina should accept the property for the purpose of founding an agricultural college, his executor should convey it to the State, to be held so long as it in good faith devoted the property to the purposes of the donation —such College to be governed by a board of trustees, which should never be increased to more than thirteen. Seven trustees named by the testator, and their successors, were to have the right to fill vacancies in their number, but the legislature might elect six other trustees.

On November 27, 1889, the State accepted the Clemson bequest, subject to the terms set forth in the will and enacted that upon the transfer of the property to the State by the executor a college should be established in connection with the devise, to be styled the Clemson Agricultural College of South Carolina, to be situated at Fort Hill, on the plantation so devised, in which should be taught all branches of study relating to agriculture, the College to be under the management of a board of thirteen trustees, composed of the seven nominated by the will and their successors and six members elected by the legislature.

Sec. 4 of the charter provided:

"That the said Board of Trustees is hereby declared to be a body politic and corporate, under the name and style of the Clemson Agricultural College of South Carolina. They shall have a corporate seal, which they may change at their discretion; and in their corporate name they may contract for, purchase and hold property, for the purpose of this act, and may take any property or money conveyed by deed, devise or bequest to said college, and may hold the same for its use and benefit; Provided that the conditions of such gift or conveyance shall in no case be inconsistent with the purposes of this act,

and shall incur no obligation on the part of the State. They shall securely invest all funds and keep all property which may come into their possession, and may sell any of the personal property not subject to trust, and reinvest the same in such way as they may deem best for the interest of said college. They may sue and be sued, plead and be impleaded, in their corporate name, and may do all things necessary to carry out the provisions of this act, and may make by-laws for this purpose if they deem it necessary."

By the act of January 4, 1894, it was declared that fifty convicts might *be employed by the Trustees of Clemson College in dyking Seneca River, adjoining the college farm, and such other work as the Trustees deem useful, for twelve months.*

In April, 1894, a resolution was passed by the Board of Trustees concerning the work of "building the dykes necessary to protect the bottom lands of Clemson College." It does not appear when this work began or was finished, but various extracts from the minutes of the trustees, from April, 1894, to July, 1905, were introduced in evidence from which it appeared that the dyke was constructed according to plans and specifications approved by the board, under the direction of engineers selected by the board, and that payments were made by it on account of work thereon. The embankment was either wholly or partially washed away, and, in 1903, a resolution was adopted by the board "to have a survey made of the dyke for the purpose of submitting estimates of the work necessary to be done to afford protection to the bottom lands on the college property—the cost of the estimate to be based on the recent flood."

Evidence was introduced as to the property owned by the College and the sources of its income, from which it appeared that a tract of land, partially paid for by the State, had been conveyed to the College in fee simple, and

other land had been conveyed for college purposes. The State appropriated more than $100,000 per annum, which, with the interest on the securities passing under the residuary clause of Dr. Clemson's will, constituted the main source of income, though the College did receive about $6,500 per annum from tuition, rent, sale of dairy products and the proceeds derived from the electric plant and textile department.

There is copied in the record the act of 1894 to incorporate Clemson College for the purpose of police regulation over the territory within five miles of the college building.

The trial court found that the current expenses were paid out of interest on the donation and from the annual appropriations by the State; that the College had no property which could be sold under execution; that the title to the land on which the dyke was erected was in the State. Referring also to the Act of 1894, conferring municipal powers on Clemson College, the court held that the defendant was a public agent, which could not be sued without the consent of the State; that such consent was not given by the provision of the charter that the trustees "might sue and be sued, plead and be impleaded in their corporate capacity," inasmuch as that related to contracts made for College purposes and did not warrant suits against a public agent for a tort. Holding that the State was an indispensable party, and had not given its consent to be sued, the court dismissed the complaint.

On the appeal the plaintiff in his assignments of error contended that the title to the land was in the State only as trustee; that the college was not a public corporation, but a private educational institution, without governmental powers; that it had not been established or endowed by the State and was not governed by the State or solely by trustees appointed by the State (4 Wheat. 634); that in addition to the equitable ownership of the Fort

Hill place, it owned certain lands in fee simple, which were subject to levy and sale and that the corporation was liable for its own torts.

The twenty-third assignment of error was as follows:

"Because the Fourteenth Amendment to the Constitution of the United States provides: 'Nor shall any State deprive any person of life, liberty or property without due process of law.' The allegations of the complaint show that plaintiff has been deprived of his property for all practical purposes as agricultural lands as effectually as if there had been a physical taking thereof; that plaintiff has thus been deprived of his property by the defendant corporation, acting by and through its board of trustees; and this constitutional guarantee has been violated by such action, whether taken pursuant to an act of the legislature or otherwise, and his honor erred in not so holding."

The Supreme Court of the State adopted the opinion of the trial judge, and on the ground that the State was a necessary party and had not consented to be sued, dismissed the bill of complaint. 77 S. Car. 12; 57 S. E. Rep. 551. Thereupon the plaintiff sued out a writ of error to this court:

*Mr. Joseph A. McCullough* and *Mr. R. T. Jaynes* for plaintiff in error.

*Mr. J. P. Carey* for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement, delivered the opinion of the court.

The plaintiff sued the Clemson Agricultural College of South Carolina, for damages to his farm, resulting from the College having built a dyke which forced the waters of the Seneca River across his land, whereby the soil had

been washed away and the land ruined for agricultural purposes. There was no demurrer, but the defendant filed what was treated as a plea to the jurisdiction in which it averred that it owned no property, and had constructed the dyke as a public agent only, by authority of the State, on land belonging to the State. By stipulation the hearing was confined solely to the question of jurisdiction, and after considering the evidence the complaint was dismissed.

That ruling and the assignments of error thereon raise the question as to whether a public corporation can avail itself of the State's immunity from suit, in a proceeding against it for so managing the land of the State as to damage or take private property without due process of law.

With the exception named in the Constitution, every State has absolute immunity from suit. Without its consent it cannot be sued in any court, by any person, for any cause of action whatever. And, looking through form to substance, the Eleventh Amendment has been held to apply, not only where the State is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the State, or is one to which it is an indispensable party. No suit, therefore, can be maintained against a public officer which seeks to compel him to exercise the State's power of taxation; or to pay out its money in his possession on the State's obligations; or to execute a contract, or to do any affirmative act which affects the State's political or property rights. *Cunningham* v. *Macon & Brunswick R. R.*, 109 U. S. 446; *North Carolina* v. *Temple*, 134 U. S. 22; *Louisiana* v. *Steele*, 134 U. S. 230; *Louisiana* v. *Jumel*, 107 U. S. 711; *Pennoyer* v. *McConnaughy*, 140 U. S. 1; *In re Ayers*, 123 U. S. 443; *Hans* v. *Louisiana*, 134 U. S. 1; *Harkrader* v. *Wadley*, 172 U. S. 148; *Hagood* v. *Southern*, 117 U. S. 52, 70.

But immunity from suit is a high attribute of sover-

eignty—a prerogative of the State itself—which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the State's citizens. To grant them such immunity would be to create a privileged class free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. For how "can the principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual defendants . . . whenever they interpose the shield of the State. . . . The whole frame and scheme of the political institutions of this country, state and Federal, protest" against extending to any agent the sovereign's exemption from legal process. *Poindexter* v. *Greenhow*, 114 U. S. 270, 291.

The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers. If they were indeed agents, acting for the State, they—though not exempt from suit—could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted. *Cunningham* v. *Macon & Brunswick R. R.*, 109 U. S. 446, 452. But if it appeared that they proceeded under an unconstitutional statute their justification failed and their claim of immunity disappeared on the production of the void statute. Besides, neither a State nor an individual can confer upon an agent authority to commit a tort so as to excuse the perpetrator. In such cases the law of agency has no application—the wrongdoer is treated as a principal and individually liable for the damages inflicted and subject to injunction against the commission of acts causing irreparable injury.

Consequently there have been recoveries in ejectment

where the public agent in possession defended under a void title of the Government. *United States* v. *Lee*, 106 U. S. 196; *Tindal* v. *Wesley*, 167 U. S. 204. A suit against a bank was sustained even though the State held part of the stock, *Bank of U. S.* v. *Planters' Bank of Georgia*, 9 Wheat. 904. A tax collector was enjoined, where, under an unconstitutional law, he was about to sell the property of the taxpayer, *Poindexter* v. *Greenhow*, 114 U. S. 270. An attorney general was restrained from suing to recover penalties imposed by an unconstitutional statute, *Ex parte Young*, 209 U. S. 123. Commissions have been enjoined from enforcing confiscatory rates, *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *Proutt* v. *Starr*, 188 U. S. 537. A state land commissioner was enjoined from proceeding, under an unconstitutional act, to cause irreparable damage to defendant's property rights, *Pennoyer* v. *McConnaughy*, 140 U. S. 1. Commissions have been restrained from enforcing a statute which illegally burdened interstate commerce, *McNeill* v. *Southern Ry.*, 202 U. S. 543; *Railway Commission* v. *Illinois Central R. R.*, 203 U. S. 335.

Other cases might be cited which deny public boards, agents and officers immunity from suit. But the principle underlying the decisions is the same. All recognize that the State, as a sovereign, is not subject to suit; that the State cannot be enjoined; and that the State's officers, when sued, cannot be restrained from enforcing the State's laws or be held liable for the consequences flowing from obedience to the State's command.

But a void act is neither a law nor a command. It is a nullity. It confers no authority. It affords no protection. Whoever seeks to enforce unconstitutional statutes, or to justify under them, or to obtain immunity through them, fails in his defense and in his claim of exemption from suit.

It is said, however, that, in the cases referred to, the of-

ficers were held liable to suit because in the transaction complained of, the statute being unconstitutional, they could not be treated as agents of the State. And it is argued that these authorities have no application to suits against those public corporations which exist, and can act, in no other capacity than as governmental agencies, or political subdivisions of the State itself. But neither public corporations nor political subdivisions are clothed with that immunity from suit which belongs to the State alone by virtue of its sovereignty. In *County of Lincoln* v. *Luning,* 133 U. S. 529, 530, the court said that: "While a county is territorially a part of the State, yet politically it is also a corporation, created by and with such powers as are given to it by the State. In this respect it is a part of the State only in that remote sense in which any city, town, or other municipal corporation may be said to be a part." The court there held that the Eleventh Amendment was limited to those cases in which the State is the real party, or party on the record, but that counties were corporations which might be sued. *Dunn* v. *University of Oregon,* 9 Oregon, 357, 362; *Herr* v. *Kentucky Lunatic Asylum,* 97 Kentucky, 458, 463; *S. C.,* 28 L. R. A. 394.

Corporate agents or individual officers of the State stand in no better position than officers of the General Government, and as to them it has often been held that: "The exemption of the United States from judicial process does not protect their officers and agents, civil or military, in time of peace, from being personally liable to an action of tort by a private person, whose rights of property they have wrongfully invaded or injured, even by authority of the United States." *Belknap* v. *Schild,* 161 U. S. 10, 18.

Undoubtedly counties, cities, townships and similar bodies politic often have a defense which relieves them from responsibility where a private corporation would be liable. But they must at least make that defense. They

cannot rely on freedom from accountability as could a State.

In this case there is no question of corporate existence and no claim that building the dyke was *ultra vires*. Plaintiff was denied a hearing, not on the ground that his complaint did not set out a cause of action, but solely for the reason that even if the College did destroy his farm, the court had no jurisdiction over a public agent.

If the State had in so many words granted the College authority to take or damage the plaintiff's property for its corporate advantage without compensation, the Constitution would have substituted liability for the attempted exemption. But the State of South Carolina passed no such act and attempted to grant no such immunity from suit as is claimed by the College. On the contrary, the statute created an entity, a corporation, a juristic person, whose right to hold and use property was coupled with the provision that it might sue and be sued, plead and be impleaded, in its corporate name.

Reference is made, however, to *Kansas ex rel. Little* v. *University of Kansas*, and the note to 29 L. R. A. 378, where state colleges, prison boards, lunatic asylums and other public institutions have been held to be agents of the State not liable to suit unless expressly made so by statute.

But an examination of the cases cited, in any respect similar to this, will show that they involve questions of liability in a suit, rather than immunity from suit. Most of them were actions for torts committed, not by the public corporation itself, but by officers of the law. These public corporations were held free from liability in the suit, on the same ground that municipalities are held not to be responsible for the negligence of policemen, jailers, prison guards, firemen, and other agents performing governmental duties. *Workman* v. *Mayor of N. Y.*, 179 U. S. 556. That general rule is of force in South Carolina, as

appears from *Gibbs* v. *Beaufort,* 20 S. Car. 213, 218, cited in the opinion of the court below, where it was said that "a municipal corporation, instituted for the purpose of assisting a State in the conduct of local self government, is not liable to be sued in an action of tort for nonfeasance or misfeasance of its officers in regard to their public duties, unless expressly made so by statute." But the plaintiff is not seeking here to hold the College liable for the nonfeasance or misfeasance either of its own officers or officers of the public. This is a suit against the College itself for its own corporate act in building a dyke, whereby the channel had been narrowed, the swift current had been diverted from the usual course across the plaintiff's farm, and, as it is alleged, destroying the banks, washing away the soil and for all practical purposes as effectually depriving him of his property as if there had been a physical taking. Compare Lewis on Eminent Domain, 2d ed., § 67; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 166; *United States* v. *Lynah,* 188 U. S. 445; *United States* v. *Welch,* 217 U. S. 333; *Chicago &c.* v. *Chicago,* 166 U. S. 226; Farnham on Waters, § 191; *Conniff* v. *San Francisco,* 67 California, 45, 50.

Again, and still treating the question as though involved in the plea to the jurisdiction, this is not an action against the College for a tort committed in the prosecution of any governmental function. The fee was in the State, but the corporation, as equitable owner, was in possession, use and enjoyment of the property. For protecting the bottom land the College, for its own corporate purposes and advantage, constructed the dyke. In so doing it was not acting in any governmental capacity. The embankment was in law similar to one which might have been built for private purposes by the plaintiff on the other side of the river. If he had there constructed a dyke to protect his farm, and in so doing had taken or damaged the land of the College, he could have been sued

and held liable. In the same way, and on similar principles of justice and legal liability, the College is responsible to him if, for its own benefit and for protecting land which it held and used, it built a dyke which resulted in taking or damaging the plaintiff's farm. 2 Dillon M. Corp. (4th ed.), § 966, p. 1180.

As a part of its plea to the jurisdiction, the College also claimed that "it never had any interest or title in the land described in the complaint, or in any other property connected with the establishment and maintenance of Clemson Agricultural College of South Carolina, all of it being the property of the State of South Carolina." And it is argued that the court could take no jurisdiction of a case against a public corporation which, at most, could only result in a judgment unenforceable by levy and sale under execution.

As a matter of fact, the record indicates that besides the State's annual appropriation and the interest on securities held under the residuary clause of Dr. Clemson's will, the College has other sources of income. It appears to own some land in fee simple. The charter authorizes it to receive bequests. So that if the Fort Hill place is not subject to levy and sale, it does not follow that the institution may not now or hereafter own property out of which a judgment in plaintiff's favor could be satisfied. Besides, we have no right to proceed on the theory that if, at the end of the litigation, plaintiff establishes his right to damages, the judgment would not be paid. These suggestions, though made in a plea to the jurisdiction, afford no reason why the College should be granted immunity from suit, when it is claimed that, in violation of the Constitution, it has taken private property for its corporate purposes without compensation.

The plaintiff prayed not only for damages but that the embankment should be removed. The title to the land and everything annexed to the soil is in the State, subject

to the conditions named in the will. The State, there-
fore, may be a necessary party to any proceeding which
seeks to affect the land itself, or to remove any structure
thereon which has become a part of the land. If so, and
unless it consents to be sued, the court cannot decree the
removal of the embankment which forms a part of the
State's property. *Cunningham* v. *Macon & Brunswick
R. R. Co.*, 109 U. S. 446. But the prayer for that part of
the relief can be stricken out without depriving the court
of jurisdiction to hear and determine the question whether
Clemson Agricultural College of South Carolina is liable
to the plaintiff for its own corporate act in building for
its own proprietary and corporate purposes a dyke which
it is alleged damaged or took the plaintiff's farm. *Colum-
bia Waterpower Company* v. *Electric Co.*, 43 S. Car. 154,
(1), 167, 169. And, if the facts hereafter warrant it, the
College may be enjoined against further acts looking to
the maintenance or reconstruction of the dyke. The judg-
ment is reversed and the cause remanded for further
proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE HARLAN dissents.