**NORTHERN NEW HAMPSHIRE LUMBER CO. v. NEW HAMPSHIRE WATER RESOURCES BOARD.**

Civil Action No. 161.

District Court, D. New Hampshire.

June 27, 1944.

Irving Hinkley, of Lancaster, N. H., for Lumber Co.

Robert Upton, of Concord, N. H., for Water Resources Board.

MORRIS, District Judge.

This action is brought by the Northern New Hampshire Lumber Company, a New Hampshire corporation, alleging that it is the owner of timber lands in the Town of Pittsburg, N. H., on which there is a large quantity of timber, wood and pulp; that the defendant, the Water Resources Board, acting under the provisions of the New Hampshire Statutes, Laws 1935, ch. 121, approved June 19, 1935, and amendments thereto, has constructed across the Connecticut River in the Town of Pittsburg, an earthen dam entirely devoid of locks, sluices, or other devices for the free and unobstructed passage of interstate commerce; that the said dam was constructed by the defendant without obtaining the consent of Congress, and without submitting the location and plans therefor to the Chief of Engineers and the Secretary of War, as required by Act of Congress, and also without obtaining a license so to do from the Federal Power

Commission under the requirements of the Federal Power Act, U.S.C.A. Title 16, §§ 791a–823.

The plaintiff alleges that its land is northerly from the dam and as constructed it prevents the plaintiff from transporting its product in interstate commerce by means of the navigable waters of the Connecticut River but is obliged to transport the same overland at a greatly increased cost.

This action was brought September 29, 1941, and seeks damages in the sum of $50,-000 and the abatement and removal of the dam.

The defendant filed an answer October 21, 1941, and on April 4, 1944, filed a substituted amended answer.

Nine grounds of defense are set forth in the amended answer which may be briefly summarized as follows:

1. The Court is without jurisdiction.

2. No legal right of the plaintiff is jeopardized.

3. Plaintiff is not entitled to have adjudicated the alleged public rights upon which it bases its claim for relief.

4. The complaint is a proceeding against the State of New Hampshire without its consent.

5. The complaint fails to state a claim against the defendant upon which relief can be granted.

6. Defendant admits the construction of the dam, but denied that it is entirely devoid of locks, sluices or other devices; denies that the river is navigable at the site of the dam and admits that the locks, sluices and other devices in said dam are neither intended for nor adapted to the passage of interstate commerce.

7. Alleges that the defendant is a public or state agency permitted and authorized by Acts of Congress to construct the dam for and on behalf of the State of New Hampshire.

8. That the complaint is a proceeding against the State of New Hampshire without its consent; that the dam was constructed by the defendant acting as a public agency of the State of New Hampshire in accordance with the laws of said State.

9. The Federal Power Commission found that the Connecticut River was not navigable at the site of the dam and that the interests of interstate and foreign commerce would not be affected thereby.

The defendant further alleges that the plaintiff has disentitled itself to relief by its unreasonable delay in proceeding to enforce its alleged rights.

The foregoing grounds of defense are followed by a motion to dismiss the action. The motion was heard orally April 4, 1944, and briefs ordered to be furnished the Court.

In considering the defendant's motion to dismiss the principal allegations in the plaintiff's writ should be considered.

The complaint alleges that the Connecticut River at the site of the dam is a navigable stream; that a dam has been constructed across it in the Town of Pittsburg, leaving no sluiceway or other devices for the passage of logs in interstate commerce; that the plaintiff owns valuable timberlands on the Connecticut River above the site of the dam, and that it, and its predecessors in title have, previous to the construction thereof, transported in interstate commerce, by means of the navigable waters of said river, large quantities of timber and wood to market.

Plaintiff's counsel, in argument, waived so much of its complaint as sought the destruction or reconstruction of said dam and confined his client's claim to damages already suffered.

Taking up the defendant's points of defense seriatim, the first relates to jurisdiction of this court. The plaintiff is a New Hampshire corporation and the Water Resources Board is an adjunct of the New Hampshire State Legislature, therefore there is no diversity of citizenship.

The plaintiff claims that its action arises under the Constitution and laws of the United States; that the dam was constructed in violation of the Acts of Congress and the laws regulating navigable streams.

█ I hold that this court has jurisdiction under U.S.C.A. Title 28, § 41.

It is probably true that plaintiff's right to use the stream, is not, strictly speaking, a legal right but a privilege or public right which the plaintiff shares with others. Whether this public right can be taken away to the damage of individual rights by Act of the State legislature raises a question of serious importance and goes to the very root of the question here invloved.

The Supreme Court of the State of New Hampshire in the case of St. Regis Paper Company v. New Hampshire Water Re-

sources Board, 92 N.H. 164, 26 A.2d 832, decided since this action was commenced, holds that: "Individual members of the public are entitled to enjoy and use public waters only derivatively; their rights are not vested or property rights but are more properly privileges which may be taken away altered or qualified."

Whether the State of New Hampshire has acted in violation of the laws of the United States in the construction of the dam is a legal question raised by the pleadings. If the dam was legally constructed, then the plaintiff's privileges have been taken away, but if illegally constructed and serious damage has resulted, then it may have a right of action.

The next ground of defense is that this complaint is a proceeding against the State of New Hampshire without its consent.

The Water Resources Board was created by an Act of the State legislature, Laws of 1935, c. 121. Its general powers include that, "The corporation shall be liable to suit in the same manner as a private corporation and shall have the power to institute and prosecute, in its own name or in the name of the state, suits at law or in equity," Section 5.

This section of the statute would appear to lend considerable force to the plaintiff's argument that the State, through the Water Resources Board has consented to be sued.

The next contention is that the complaint fails to state a claim against the defendant upon which relief can be granted.

This ground of defense depends upon so many different angles that to enter into a discussion of them as an individual ground would require an extended review of all the questions involved in the final determination of the case.

The defendant admits the construction of the dam but denies that it is entirely devoid of locks or sluices or other devices, but admits that the locks, sluices or other devices in said dam are neither intended for nor adapted to the passage of interstate commerce.

With the exception of the navigability of the River the admissions appear favorable to the plaintiff's cause of action.

The next contention is that the defendant is a public agency and was permitted and authorized by Acts of Congress to construct the dam for and on behalf of the State of New Hampshire.

It is undoubtedly true that the dam was constructed by an agency of the State for public use and benefit. As was said in the case of United States v. Rio Grande Irrigation Co., 174 U.S. 690–703, 19 S.Ct. 770, 775, 43 L.Ed. 1136: "The power of the state to thus legislate for the interests of its own citizens is conceded, and until in some way congress asserts its superior power, and the necessity of preserving the general interests of the people of all the states, it is assumed that state action, although involving temporarily an obstruction to the free navigability of a stream, is not subject to challenge."

The Federal Power Commission has found "That the part of the Connecticut River at the site of the dam is a nonnavigable waterway," and, "That the interests of interstate or foreign commerce would not be affected by the construction."

The plaintiff contends that the Connecticut River at the site of the dam is a navigable river over which the Federal Power Commission has no control.

The facts found by the Federal Power Commission may be open to attack in the Federal court but the attack should be seasonably made before the State has acted on the Commission's findings and has expended large sums of money in constructing a dam. United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 19 S. Ct. 770, 43 L.Ed. 1136; United States v. Appalachian Electric Power Co., 4 Cir., 107 F.2d 769; Grand River Dam Authority v. Going et al., D.C., 29 F.Supp. 316.

As was said in the Rio Grande case: "The mere fact that logs, poles, and rafts are floated down a stream occasionally and in times of high water does not make it a navigable river."

As I construe the Federal statutes, Congress created the Federal Power Commission with authority to determine the question of navigability as it affects interstate commerce and the fact that the Commission ruled that the part of the Connecticut River at the site of the dam was a nonnavigable stream, made it unnecessary to bring the matter before the Chief Engineer of the War Department.

As I have already said, the rulings of the Federal Power Commission are subject to attack in an action seasonably brought. Whether or not the rulings of the Commission could be set aside or whether the dam was constructed with or

without the consent of Congress, is not, to my mind, determinative of the issue before the Court.

The United States having disclaimed any interest in the construction of the dam it became entirely a matter within the jurisdiction of the State. If any wrong was committed, it was committed by the State. If the plaintiff's rights were injured it was because of a tort committed by the State which alone it might or might not be called upon to answer. It must be conceded that the dam and all income derived from it is the property of the State of New Hampshire.

The plaintiff relies upon the case of Hopkins v. Clemson College, 221 U.S. 636, 31 S.Ct. 654, 658, 55 L.Ed. 890, 35 L.R.A.,N.S., 243. It seems to me that this case is easily distinguished from the facts in the instant case. In the Hopkins case the tort was committed by the college, not in the prosecution of any governmental function, "the fee was in the state, but the corporation, as equitable owner, in possession, use, and enjoyment of the property." The College constructed the dyke for its own corporate purposes and advantage. In so doing it was not acting in any governmental capacity.

The facts in the instant case, as disclosed by the pleadings, and the statute authorizing the construction of the dam, are entirely different.

The Water Resources Board was clearly an agency of the State for the construction of the dam. It does not own the dam and has no pecuniary interest in its operation. Upon completion of the dam it was operated by a water regulating committee whose duties were defined by R.L.Ch. 266, § 12. At the last session of the Legislature the committee was abolished and the operation of the dam committed to the Water Resources Board. Chapter 152, § 3, Laws 1943.

The dam was constructed by authority of the State. It is owned by the State and operated by an agency of the State. The income derived from the operation of the dam belongs to the State and if any tort was committed, it was committed by the State.

As was said in Hopkins v. Clemson College, supra: "With the exception named in the Constitution, every state has absolute immunity from suit. Without its consent it cannot be sued in any court, by any person, for any cause of action whatever.

And, looking through form to substance, the 11th Amendment has been held to apply, not only where the state is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the state, or is one to which it is an indispensable party."

█ The argument is advanced by the plaintiff that when the New Hampshire Legislature created the Water Resources Board and made it a corporation with authority to sue and be sued, the State thereby agreed to be sued. I construe this to mean, that if the Board was guilty of any misfeasance or non-feasance, action might be brought against it and its members might be individually liable but no judgment against it would subject the State's property to seizure to satisfy such a judgment.

The New Hampshire Supreme Court in construing the statute now under consideration negatives the plaintiff's contention in the following language: "While the Board is liable to suit 'in the same manner as a private corporation,' the extent of liability is far short of that general private liability, and is limited to such as is thought to be in furtherance of the execution of a project. * * * As a general governing rule of demarcation, private liability inheres for the Board's contracts duly entered into and for wrongful conduct in the performance of its functions and projects, but not for the plans and undertakings of a project within its authority and approved and directed by the Governor and Council. * * * The Board has been constituted to perform a governmental function." The relation between the State and the Board is not one of principal and agent, but the Board is an agency which is a part of the State government.

█ Ever since the decision in the case of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, overruling the doctrine of Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865, it has been held that the Federal courts are bound by State law. Mr. Justice Brandeis speaking for the court says [304 U.S. 64, 58 S.Ct. 822, 82 L.Ed. 1188, 114 A.L.R. 1487]: "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legisla-

ture in a statute or by its highest court in a decision is not a matter of federal concern."

I find no ground for ruling that the State was engaged in an illegal act when it constructed the dam. The Federal government had disclaimed any interest in its construction. The Water Resources Board acted throughout under the instructions of the State Legislature as provided in the statutes.

The dam involved in the suit of the St. Regis Paper Co. v. Water Resources Board, 92 N.H. 164, 26 A.2d 832, decided by the New Hampshire Supreme Court, June 2, 1942, is the same dam involved in the present suit. All the facts raised, or which might be raised, in that case are comparable with the facts in the instant case. I respect that decision and feel bound by it.

If the plaintiff has been damaged by wrongful action of the State, its remedy is by petition to the Legislature and not in an action against the Water Resources Board.

Petition to dismiss granted.