The CITY OF NEWARK, a Municipal Corporation of the State of New Jersey, Appellant,

v.

UNITED STATES of America.

No. 12274.

United States Court of Appeals Third Circuit.

Argued Dec. 3, 1957.

Decided March 20, 1958.

Jacob M. Goldberg, Newark, N. J. (Vincent P. Torppey, Newark, N. J., Joseph A. Ward, Newark, N. J., on the brief), for appellant.

Morton Hollander, Washington, D. C. (Geo. S. Leonard, Acting Asst. Atty. Gen., Chester Weidenburner, U. S. Atty., Newark, N. J., Paul A. Sweeney, Atty.

Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.

STALEY, *Circuit Judge.*

An intersection collision between an ambulance of the City of Newark and a mail truck of the United States presents in this appeal the interesting question of the permissive extent of defenses based upon sovereign immunity in an action between a municipality and the federal government.

The facts are relatively simple and free from dispute. On April 13, 1955, an ambulance owned by the City of Newark was being driven on an errand of mercy in that city. A United States mail truck, being operated on government business, came into collision with the ambulance at an intersection.

The City of Newark brought an action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346 (b) and (c) and 2674, for damage to the ambulance in the amount of $3,000. The United States counterclaimed for damage to the mail truck in the amount of $245.-75. The district court found that both drivers were negligent, and the concurring negligence was the legal cause of the collision. Judgment on the counterclaim of the United States was entered for the city. The district court determined that the New Jersey decisions preventing a private defendant from raising the defense of contributory negligence to bar a municipality's recovery applied to the United States by virtue of the Tort Claims Act. It held, however, that the conduct of the city's driver amounted to active wrongdoing, and as such was imputable to Newark under New Jersey law, preventing its recovery in the main suit. D.C.N.J.1957, 149 F.Supp. 917.

We agree with the action of the district court in dismissing the complaint of Newark, but we choose to base our affirmance upon the ground that the United States may avail itself of the defense of contributory negligence in an action against it by a municipality of the state of New Jersey.

Although the Tort Claims Act obviously intended to provide redress primarily for private suitors, the statute contains nothing to prevent actions like the present one by a municipality against the United States. After it gave the district courts jurisdiction of civil actions against the United States for money damages for injury to property, personal injury, or death, the Act further provided that the liability of the United States shall be as that of a private person in accordance with the law of the place where the negligence occurred. 28 U.S.C. §§ 1346(b) and 2674. Thus a literal interpretation of this statute would prevent the United States from successfully asserting the defense of contributory negligence, inasmuch as the defense is not available to a private person when sued by a municipality in New Jersey. City of Paterson v. Erie R. Co., 1910, 78 N.J.L. 592, 75 A. 922, 30 L.R.A., N.S., 209; Miller v. Layton, 1945, 133 N.J.L. 323, 44 A.2d 177, 1 A.L.R.2d 825.

The rationale of these New Jersey decisions is that if the negligence of a municipality cannot be imputed to it when it is a defendant by reason of its sovereignty, it follows that its contributory negligence cannot be imputed to it when the municipality itself undertakes to bring the action. Thus the decisional law of New Jersey, precluding the defense of contributory negligence against a municipality, allows that subordinate arm of the state not only to protect its treasury, but also to increase it by virtue of its sovereignty. Other states which have dealt with the problem have reached a contrary conclusion and have permitted the defense of contributory negligence against the plaintiff sovereign.[1] See An-

---

1. In the federal system, whenever the United States brings an action as plaintiff, it waives its sovereignty and assumes the status of a private individual for the purposes of counterclaim or defenses. The Siren, 1868, 7 Wall. 152, 154, 19 L. Ed. 129. Where the defendant has a claim against the United States "it would

notation, 1948, 1 A.L.R.2d 827. So far as our research discloses, New Jersey is the only jurisdiction which precludes the defense.

■■ Whatever immunity the City of Newark may possess is attributed to it only by virtue of the sovereign immunity of the state of New Jersey. The immunity of Newark cannot rise above that of its parent state. At this point, a distinction should be noticed between immunity from suit, that is, freedom from accountability, and immunity from liability after suit is brought. Immunity from suit altogether is the lofty prerogative of the state alone by virtue of its sovereignty. A municipal corporation might have a defense relieving it of liability, but it must at least make that defense. Hopkins v. Clemson Agricultural College, 1911, 221 U.S. 636, 645, 31 S.Ct. 654, 55 L.Ed. 890. The immunity of a municipality, therefore, is something less shielding than that of the sovereign state.

■ The immunity of a state from suit involves only immunity from the suit of individuals and not from an action by the United States. In United States v. State of Texas, 1892, 143 U.S. 621, 645–646, 12 S.Ct. 488, 493, 36 L.Ed. 285, the Supreme Court, speaking of Penn v. Baltimore, 1 Ves.Sen. 444, said:

"* * * That case, and others in this court relating to the suability of states, proceeded upon the broad ground that 'it is inherent in the nature of sovereignty not to be amenable to the suit of an *individual* without its consent.'

"The question as to the suability of one government by another government rests upon wholly different grounds. Texas is not called to the bar of this court at the suit of an individual, but at the suit of the gov-

ernment established for the common and equal benefit of the people of all the States. The submission to judicial solution of controversies arising between these two governments, 'each sovereign, with respect to the objects committed to it, and neither sovereign with respect to the objects committed to the other,' McCulloch v. State of Maryland, 4 Wheat. 316, 400, 410, 4 L.Ed. 579, but both subject to the supreme law of the land, does no violence to the inherent nature of sovereignty."

The consent of states to suits by the United States is implied as inherent in the federal plan. Principality of Monaco v. State of Mississippi, 1934, 292 U.S. 313, 54 S.Ct. 745, 78 L.Ed. 1282. The Supreme Court recently reaffirmed the doctrine of United States v. State of Texas, supra, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285, when it allowed injunction actions by the United States against Louisiana and Texas and required these states to account for profits received from offshore oil. United States v. State of Louisiana, 1950, 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216; United States v. State of Texas, 1950, 339 U.S. 707, 70 S.Ct. 918, 94 L.Ed. 1221. Both states had opposed a government motion for leave to file the complaint on the grounds that they had not consented to be sued and that United States v. State of Texas, supra, 143 U.S. 621, 12 S.Ct. 488, 36 L.Ed. 285, should be overruled. Refusing to overrule United States v. State of Texas, the Supreme Court granted the United States leave to file its complaints. 1949, 337 U.S. 902, 69 S.Ct. 1040, 93 L.Ed. 1716.

■ It was the thought of the district court here that while the United States could certainly sue a municipality as an arm of the state, the municipality

be a very rigid principle, to deny him the right of setting up such a claim in a court of justice * * *." United States v. Ringgold, 1834, 8 Pet. 150, 162, 8 L.Ed. 899. See also, United States v. The Thekla, 1924, 266 U.S. 328, 339–340,

45 S.Ct. 112, 69 L.Ed. 313. The general doctrine has been strengthened and extended by the recent decision of the Supreme Court in National City Bank of New York v. Republic of China, 1955, 348 U.S. 356, 75 S.Ct. 423, 99 L.Ed. 389.

would nonetheless be treated as a sovereign in the determination of its liability, citing United States v. State of North Carolina, 1890, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336, where it was decided that North Carolina was not liable to the United States for interest on bonds after the due date. Restated, the view of the district court is that while a municipality has no immunity from the suit of the United States, it nonetheless has immunity from liability after suit is brought. With this we do not agree. As stated above, a municipality does not have immunity even from the suit of an individual, though it might have a defense relieving it of liability. Hopkins v. Clemson Agricultural College, supra, 221 U.S. 636, at page 645, 31 S.Ct. at page 657. If the argument of the district court were adopted, the United States would stand in no better position than an individual. As we have seen, this is not the case. The United States has frequently brought actions against states unhampered by the necessity of obtaining state consent; moreover, the liability of the state in such actions is determined without regard to the state's immunity from liability. The rule of United States v. State of North Carolina, supra, 136 U.S. 211, 10 S.Ct. 920, 34 L.Ed. 336, relied on by the district court is simply that the state of North Carolina was not liable for interest in the absence of an express undertaking. Where an individual is plaintiff in a similar cause of action, the defendant state is not amenable to suit because of its sovereignty. Hans v. State of Louisiana, 1890, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842. At the suit even of another state, however, the defendant state is not treated as sovereign, and must respond in damages. State of South Dakota v. State of North Carolina, 1904, 192 U.S. 286, 321, 24 S.Ct. 269, 48 L.Ed. 448. Surely, in view of the principles enunciated in United States v. State of Texas, supra, 143 U.S. at page 646, 12 S.Ct. at page 493, the federal government stands in a much better position than a state, so that in an action

between the two, sovereignty is laid aside.

■ Prior to the Tort Claims Act, the United States could have recovered, and still may recover, money damages against a municipality as a subordinate arm of the state. Sovereignty provides no defense when the United States sues a state or city. The decisions of New Jersey which disallow the defense of contributory negligence by an individual are predicated upon the sovereignty of the municipality. The pivotal problem is whether the Tort Claims Act should be read not only to reduce the immunity of the federal government but also to enhance that of a municipality by giving it a defense based upon the sovereignty which was held ineffectual as against the United States before the passage of the Act. We think it should not.

■ As we have said above, if applied literally, the Tort Claims Act may preclude the assertion by the United States of the defense of contributory negligence, for by the wording of the statute, the liability of the United States is that of a private individual in the state where the negligence occurred, and in New Jersey a private person could not assert the defense. However, it has long been a fundamental canon of statutory construction that the intention of the lawmakers is paramount in determining the meaning of an act. A situation not within the intention of the enacting body, though it is within the letter of the statute, is not within the statute. Holy Trinity Church v. United States, 1892, 143 U.S. 457, 459, 12 S.Ct. 511, 36 L.Ed. 226.

In the leading case of United States v. Kirby, 1868, 7 Wall. 482, 486–487, 19 L.Ed. 278, the Supreme Court decided that the arrest of a mail carrier on a warrant for murder was not an obstruction of mail within the meaning of an act, though a literal reading would render it a crime; it said:

"* * * All laws should receive a sensible construction. Gen-

eral terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. The reason of the law in such cases should prevail over its letter."

This principle has often been reiterated by the Supreme Court. Territory of Hawaii v. Mankichi, 1903, 190 U.S. 197, 212–215, 23 S.Ct. 787, 47 L.Ed. 1016; Sorrells v. United States, 1932, 287 U.S. 435, 446–447, 53 S.Ct. 210, 77 L.Ed. 413.[2]

It is the position of the United States that the unfairness of preventing it from pleading contributory negligence is sufficient to condemn Newark's position. However that may be, the incongruity that New Jersey cannot raise the shield of sovereign immunity when the United States is plaintiff but can do so when the United States is defendant, is enough to indicate to this court that Congress did not intend the provisions of the Tort Claims Act to apply so as to preclude the defense of contributory negligence here.

Sovereign immunity has meaning only where an *individual* seeks redress against the sovereign. United States v. State of Texas, supra, 143 U.S. 621, 645–646, 12 S.Ct. 488, 36 L.Ed. 285. And it should be observed that normally in the federal system the Eleventh Amendment immunity of a state is a personal defense which is waived even by voluntary proceedings in intervention. Clark v. Barnard, 1883, 108 U.S. 436, 447–448, 2 S.Ct. 878, 27 L.Ed. 780; see also State of Missouri v. Fiske, 1933, 290 U.S. 18, 24, 54 S.Ct. 18, 78 L.Ed. 145.

In Gunter v. Atlantic Coast Line Railroad Co., 1906, 200 U.S. 273, 284, 26 S.Ct. 252, 256, 50 L.Ed. 477, the Supreme Court, speaking of actions involving a state and an individual, said:

"Although a state may not be sued without its consent, such immunity is a privilege which may be waived and hence where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment."

The Tort Claims Act is concerned with federal sovereignty; it was not within the intention of Congress to vitiate the Supreme Court rulings concerning the waiver of state immunity whenever it submits its rights to a federal court for determination.

The unavailability of the defense of contributory negligence to the United States in this suit does not arise because of the immunity or waiver of immunity of the federal government, but arises out of and because of the claimed immunity of the state of New Jersey. Being concerned solely with the sovereign immunity of the United States, the Tort Claims Act does not purport to deal with this situation. Nor do we think that Congress intended to abrogate the unfairness inherent in the sovereign immunity of the United States in tort matters only to have the United States faced with the inability to plead the defense of contributory negligence because of New Jersey decisions based upon the subordinate sovereignty of a municipal corporation.

The judgment of the district court will be affirmed.

2. See also the excellent discussion in Riggs v. Palmer, 1899, 115 N.Y. 506, 22 N.E. 188, 5 L.R.A. 340, where a slayer was not permitted to inherit property from his victim, regardless of the fact that the descent statute provided no exception for that situation.