# UNITED STATES *v.* LOUISIANA.

## NO. 12, ORIGINAL.

Argued March 27, 1950.—Decided June 5, 1950.

*Solicitor General Perlman* argued the cause for the United States. With him on the brief were *Attorney General McGrath, Assistant Attorney General Vanech, Arnold Raum, Oscar H. Davis, Robert E. Mulroney, Robert M. Vaughan, Frederick W. Smith* and *George S. Swarth.*

*L. H. Perez* and *Cullen R. Liskow* argued the cause for the defendant. With them on the brief were *Bolivar E. Kemp, Jr.,* Attorney General of Louisiana, *John L. Madden,* Assistant Attorney General, *Stamps Farrar, Bailey Walsh* and *F. Trowbridge vom Baur.*

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The United States by its Attorney General and its Solicitor General brought this suit against the State of Louisiana, invoking our jurisdiction under Art. III, § 2, Cl. 2 of the Constitution which provides "In all Cases . . . in which a State shall be Party, the supreme Court shall have original Jurisdiction."

The complaint alleges that the United States was and is

"the owner in fee simple of, or possessed of paramount rights in, and full dominion and power over, the lands, minerals, and other things underlying the Gulf of Mexico, lying seaward of the ordinary low-water mark on the coast of Louisiana and outside of the inland waters, extending seaward twenty-seven marine miles and bounded on the east and west, respectively, by the eastern and western boundaries of the State of Louisiana."

The complaint further alleges that Louisiana, claiming rights in that property adverse to the United States, has made leases under her statutes to various persons and corporations which have entered upon said lands, drilled wells for the recovery of petroleum, gas and other hydrocarbon substances, and paid Louisiana substantial sums of money in bonuses, rent, and royalties, but that neither Louisiana nor its lessees have recognized the rights of the United States in said property.

The prayer of the complaint is for a decree adjudging and declaring the rights of the United States as against Louisiana in this area, enjoining Louisiana and all persons claiming under it from continuing to trespass upon the area in violation of the right of the United States, and requiring Louisiana to account for the money derived by it from the area subsequent to June 23, 1947.

Louisiana opposed the motion for leave to file the complaint, contending that the States have not consented to be sued by the Federal Government and that *United States* v. *Texas,* 143 U. S. 621, which held that Art. III, § 2, Cl. 2 of the Constitution, granting this Court original jurisdiction in cases "in which a State shall be Party," includes cases brought by the United States against a State should be overruled. We heard argument on the

motion for leave to file and thereafter granted it. 337 U. S. 902, rehearing denied, 337 U. S. 928.

Louisiana then filed a demurrer asserting that the Court has no original jurisdiction of the parties or of the subject matter. She moved to dismiss on the ground that the lessees are indispensable parties to the case; and she also moved for a more definite statement of the claim of the United States and for a bill of particulars. The United States moved for judgment. The demurrer was overruled, Louisiana's motions denied, and the motion of the United States for judgment was denied, Louisiana being given 30 days in which to file an answer. 338 U. S. 806.

In her answer Louisiana admits that "the United States has paramount rights in, and full dominion and power over, the lands, minerals and other things underlying the Gulf of Mexico adjacent to the coast of Louisiana, to the extent of all governmental powers existing under the Constitution, laws and treaties of the United States," but asserts that there are no conflicting claims of governmental powers to authorize the use of the bed of the Gulf of Mexico for the purpose of searching for and producing oil and other natural resources, on which the relief sought by the United States depends, since the Congress has not adopted any law which asserts such federal authority over the bed of the Gulf of Mexico. Louisiana therefore contends that there is no actual justiciable controversy between the parties. Louisiana in her answer denies that the United States has a fee simple title to the lands, minerals, and other things underlying the Gulf of Mexico. As affirmative defenses Louisiana asserts that she is the holder of fee simple title to all the lands, minerals, and other things in controversy; and that since she was admitted into the Union in 1812, she has exercised continuous, undisturbed and unchallenged sovereignty and possession over the property in question.

Louisiana also moved for trial by jury. She asserts that this suit, involving title to the beds of tide waters, is essentially an action at law and that the Seventh Amendment and 62 Stat. 953, 28 U. S. C. § 1872, require a jury.[1]

The United States then moved for judgment on the ground that Louisiana's asserted defenses were insufficient in law. We set the case down for argument on that motion.

The territory out of which Louisiana was created was purchased by the United States from France for $15,-000,000 under the Treaty of April 30, 1803, 8 Stat. 200. In 1804 the area thus acquired was divided into two territories, one being designated as the Territory of Orleans, 2 Stat. 283. By the Enabling Act of February 20, 1811, 2 Stat. 641, the inhabitants of the Territory of Orleans were authorized to form a constitution and a state government. By the Act of April 8, 1812, 2 Stat. 701, 703, Louisiana was admitted to the Union "on an equal footing with the original states, in all respects whatever." And as respects the southern boundary, that Act recited that Louisiana was "bounded by the said gulf [of Mexico] . . . including all islands within three leagues of the coast."[2] In 1938 Louisiana by statute declared its southern boundary to be twenty-seven marine miles from the shore line.[3]

---

[1] The Seventh Amendment provides: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

28 U. S. C. § 1872 provides: "In all original actions at law in the Supreme Court against citizens of the United States, issues of fact shall be tried by a jury."

[2] And see Dart, Louisiana Constitutions (1932), p. 499.

[3] 6 Dart, La. Gen. Stats. (1939) §§ 9311.1–9311.4.

We think *United States* v. *California,* 332 U. S. 19, controls this case and that there must be a decree for the complainant.

We lay aside such cases as *Toomer* v. *Witsell,* 334 U. S. 385, 393, where a State's regulation of coastal waters below the low-water mark collides with the interests of a person not acting on behalf of or under the authority of the United States. The question here is not the power of a State to use the marginal sea or to regulate its use in absence of a conflicting federal policy; it is the power of a State to deny the paramount authority which the United States seeks to assert over the area in question. We also put to one side *New Orleans* v. *United States,* 10 Pet. 662, holding that title to or dominion over certain lots and vacant land along the river in the city of New Orleans did not pass to the United States under the treaty of cession but remained in the city. Such cases, like those involving ownership of the land under the inland waters (see, for example, *Pollard's Lessee* v. *Hagan,* 3 How. 212), are irrelevant here. As we pointed out in *United States* v. *California,* the issue in this class of litigation does not turn on title or ownership in the conventional sense. California, like the thirteen original colonies, never acquired ownership in the marginal sea. The claim to our three-mile belt was first asserted by the national government. Protection and control of the area are indeed functions of national external sovereignty. 332 U. S. pp. 31–34. The marginal sea is a national, not a state concern. National interests, national responsibilities, national concerns are involved. The problems of commerce, national defense, relations with other powers, war and peace focus there. National rights must therefore be paramount in that area.

That is the rationale of *United States* v. *California.* It is fully elaborated in the opinion of the Court in that case and does not need repetition.

We have carefully considered the extended and able argument of Louisiana in all its aspects and have found no reason why Louisiana stands on a better footing than California so far as the three-mile belt is concerned. The national interest in that belt is as great off the shore line of Louisiana as it is off the shore line of California. And there are no material differences in the preadmission or postadmission history of Louisiana that make her case stronger than California's. Louisiana prior to admission had no stronger claim to ownership of the marginal sea than the original thirteen colonies or California had. Moreover, the national dominion in the three-mile belt has not been sacrificed or ceded away in either case. The United States, acting through its Attorney General, who has authority to assert claims of this character and to invoke our jurisdiction in a federal-state controversy (*United States* v. *California*, pp. 26–29), now claims its paramount rights in this domain.

There is one difference, however, between Louisiana's claim and California's. The latter claimed rights in the three-mile belt. Louisiana claims rights twenty-four miles seaward of the three-mile belt. We need note only briefly this difference. We intimate no opinion on the power of a State to extend, define, or establish its external territorial limits or on the consequences of any such extension *vis à vis* persons other than the United States or those acting on behalf of or pursuant to its authority. The matter of state boundaries has no bearing on the present problem. If, as we held in California's case, the three-mile belt is in the domain of the Nation rather than that of the separate States, it follows *a fortiori* that the ocean beyond that limit also is. The ocean seaward of the marginal belt is perhaps even more directly related to the national defense, the conduct of foreign affairs, and world commerce than is the marginal sea. Certainly it is not less so. So far as the issues presented here are

concerned, Louisiana's enlargement of her boundary emphasizes the strength of the claim of the United States to this part of the ocean and the resources of the soil under that area, including oil.

Louisiana's motion for a jury trial is denied. We need not examine it beyond noting that this is an equity action for an injunction and accounting. The Seventh Amendment and the statute,[4] assuming they extend to cases under our original jurisdiction, are applicable only to actions at law. See *Shields* v. *Thomas,* 18 How. 253, 262; *Barton* v. *Barbour,* 104 U. S. 126, 133–134.

We hold that the United States is entitled to the relief prayed for. The parties, or either of them, may before September 15, 1950, submit the form of decree to carry this opinion into effect.

*So ordered.*

MR. JUSTICE JACKSON and MR. JUSTICE CLARK took no part in the consideration or decision of this case.

[For opinion of MR. JUSTICE FRANKFURTER in this case and in No. 13, Original, *United States* v. *Texas,* see *post,* p. 723.]

---

[4] See note 1, *supra.*