**SUPERIOR OIL CO. et al.**

v.

**FONTENOT.**

No. 14923.

United States Court of Appeals, Fifth Circuit.

June 18, 1954.

Rehearing Denied July 22, 1954.

Calvin E. Hardin, Baton Rouge, La., Cullen R. Liskow, Lake Charles, La., Finas P. Jones, Jr., Houston, Tex., Liskow & Lewis, Lake Charles, La., of counsel, for appellants.

John B. Smullin, Dept. of Revenue, Baton Rouge, La., for appellee.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under LSA–Revised Statutes, Title 47, Sec. 1576, the suit sought to recover $66,964.30 which the plaintiffs had paid to defendant, as collector, as severance taxes claimed to be due for oil and gas produced after June 5, 1950, and before May 22, 1953.

The claim briefly stated was:

1. That plaintiffs prior to June 5, 1950, acquired an oil, gas and mineral lease, State lease number 194, to 556.77 acres forming a portion of the bed of the Gulf of Mexico within the three mile limit which had been originally granted by the State on February 20, 1928, to E. C. Andrus as lessor;

2. That prior to June 5, 1950, plaintiffs had discovered and were producing oil in paying quantities therefrom and they have continued since to produce same;

3. That on June 5, 1950, the Supreme Court of the United States [1] rendered its decision in favor of the United States and against the State of Louisiana as to the lands involved in the suit, including the lands and area from which plaintiffs were producing oil;

4. That on Dec. 11, 1950, a decree [2] purporting to give effect to the decision was entered, but no order or process was issued against plaintiffs under the decree and plaintiffs, with the knowledge and permission without let or hinderance from administrative officials of the United States, have, since said decree was entered, continued as before to operate the wells in said area and to sever, produce and appropriate to their own use oil and gas therefrom;

5. That prior to the effective date of the "Submerged Lands Act," Public Law 31, Eighty-third Congress, First Session, 43 U.S.C.A. § 1301 et seq., there was no law of congress authorizing the production of oil or gas from the area herein discussed;

6. That by said act, which became effective May 22, 1953, title to and ownership of the lands dealt with in the decision above referred to were established and vested in the State of Louisiana and the lessees of said state and said act released and relinquished to the state and its lessees all right and title of the United States in the lands and the mineral resources thereunder and all claims that it had for money or damages arising out of the operations conducted on said land by the state or its lessees;

7. That on August 6, 1953, defendant, as Collector of Revenue of the State of Louisiana, claiming to be acting pursuant to Title 47, Sec. 631–646 inclusive, authorizing the levy and collection of severance taxes, demanded payment of severance taxes claimed to be due from

---

1. In the case of United States v. State of Louisiana, 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216.

2. United States v. Louisiana, 340 U.S. 899, 71 S.Ct. 275, 95 L.Ed. 651.

the area above described after June 5, 1950, and prior to May 22, 1953, and plaintiffs paid same under protest and upon notice under the provisions of LSA–Revised Statutes, Title 47, Sec. 1576, plaintiffs would within thirty days from the date of payment file suit for its recovery;

8. That severance taxes on oil and gas for the period for which they were claimed were not due by plaintiffs because such taxes are due from and only from the owner or owners of the oil and gas severed and plaintiffs and the State of Louisiana were not, but the United States was, the owner of all oil and gas severed by plaintiffs during that period, and the State of Louisiana may not levy taxes on the United States or its property;

9. That, as the severance laws of Louisiana do not and could not authorize the assessment of severance taxes against plaintiffs who were not the owners of the oil and gas severed during that period, the collection from plaintiff was in violation of the Fourteenth Amendment to the Constitution of the United States.

The defendant moving [3] to dismiss the action because the complaint did not state a claim upon which relief could be granted, the motion was granted without opinion, and the suit was dismissed.

Appellants, plaintiffs below, are here insisting that the district judge erred in accepting the defendant's theory that the case must be treated as one dealing with plaintiffs' rights to the oil and gas taken from the area involved under the mineral lease and the Submerged Lands Act, when that is not at all the issue to be decided, the question to be answered. This issue, this question, say appellants, is whether plaintiffs did, indeed could, owe severance taxes on oil and gas, of which, when taken between June 5, 1950 and May 22, 1953, they were not the owners, but the United States was.

Admitting the correctness of the general rule invoked by defendant, that a lessee cannot dispute his lessor's title, meaning thereby that a lessee cannot, to avoid paying his rent, dispute his lessor's title or repudiate the possession he had from his lessor, they insist that the rule does not and cannot apply here, for that plaintiffs, during the period from June, 1950 to May, 1953, did not dispute their lessor's title, it was the United States that did so, and successfully.

Insisting that the State did not maintain them in possession as owners, but that, on the contrary, both the State and they, as owners under lease from the State, were as such enjoined from operating the property, and that the oil and gas severed by them during that period was severed by them, not as owners under the State but as permittees under the United States, the owner of the land and of the oil and gas taken therefrom, they urge upon us that since the United States, as owner, was not subject to the taxing power of the State, no severance

---

3. On the grounds that:

  I. Plaintiffs—Lessees have no right under the facts pleaded to question the State's title to the property taken possession of and held and operated by them under lease from the state;

  II. Under United States Public Law 31, plaintiffs hold their lease only under the provision that within ninety days from the effective date hereof the lessee shall pay to the State or its grantee all rents, royalties, and other sums payable between June 5, 1950, and the effective date hereof under such lease and the laws of the state issuing or whose grantee issues such lease;

  III. Public Law No. 31 recognizes the right of the State of Louisiana to the area in question and the validity of the leases made by the State and by paying rents and royalties to the State in compliance with their leases and the Statute, plaintiffs too have recognized the title of the State of Louisiana and their own ownership of the oil and gas which they have severed from the land and taken and appropriated as their own;

  IV. Plaintiffs held their rights by virtue of State Lease 194 and, as owners claiming the right to do so, they admittedly severed, produced and appropriated as their own oil and gas from the leased land and therefore they owe the tax under both the Louisiana Severance Tax Statute and Public Law No. 31.

**568**

taxes were or could be due the State for oil and gas severed during that period by or under permission of the United States.

They argue, in short, that the single, the only, question for determination here is whether, under the provisions of Title 47, Sections 631 to 634,[4] assessing severance taxes against the owner of natural resources severed from the soil, plaintiffs, as to the oil and gas so severed by them, were or could be regarded as owners subject to the tax since, though the United States suffered them to sever and appropriate the oil and gas to their own use, it was in law and in fact the owner of them, and no tax could be assessed against it or anyone acting under its authority.

To appellee's contention that, under the doctrine of relation back, the undisputed ownership of these plaintiffs as lessees of the state, which finally emerged from the confusion of the decision, decree, administrative action, and legislation which marked the submerged lands controversy, relates back to the beginning of the title and possession of lessees under the lease and fully supports the severance taxes, appellants oppose the teachings of McCurdy v. United States, 264 U.S. 484, 44 S.Ct. 345, 68 L.Ed. 801, and cases following it, among them Childers v. Beaver, 270 U.S. 555, 558, 46 S.Ct. 387, 70 L.Ed. 730, and Santa Rita Oil & Gas Co. v. Board of Equalization, 101 Mont. 268, 54 P.2d 117, which applied the doctrine of McCurdy's case to severance taxes of the State of Montana, sought to be imposed on indians' royalties on oil produced from Blackfeet Reservation lands held by Indian trust patent.

Quoting from the McCurdy case [264 U.S. 484, 44 S.Ct. 346]:

" * * * The doctrine of relation gives effect to an act done at one time as if it had been done at another. It is a legal fiction adopted by courts solely for purposes of justice—to avoid denial or loss of right, but not to impose burdens",

appellants insist that to the facts as pleaded, the doctrine of relation does not apply, and the question it poses must be answered in the affirmative and the judgment reversed.

We do not think so. In quoting from the McCurdy case, appellants do not quote far enough to fit the facts of this case. For immediately following the above quoted language, the opinion goes on significantly to say:

*"Its application depends on some antecedent right * * *"* (Emphasis supplied.)

and to cite, among other cases, Gibson v. Chouteau, 13 Wall. 92, 20 L.Ed. 534. In that case, the court said:

"The error of the learned court consisted in overlooking the fact that the doctrine of relation is a fiction of law adopted by the courts solely for the purposes of justice, *and is only applied for the security and protection of persons who stand in some privity with the party that initiated proceedings for the land, and acquired the equitable claim or right to the title."* (Emphasis supplied.)

In Gilbert v. McDonald, 94 Minn. 289, 102 N.W. 712, the court, applying the

4. Section 631 reads:
"Taxes as authorized by Section 21 of Article X of the Constitution of Louisiana, are hereby levied upon all natural resources severed from the soil or water * * *".
Section 632, which is important here, reads:
"These taxes shall be paid by the owner or proportionately by the owners thereof at the time of the severance and become due and exigible quarterly, as herein provided; * * *."

In Section 634, it is again specifically said term "owner" means "owner at the time of severance."
It is later provided that quarterly reports shall be made by the person severing the natural resources who shall "withhold out of the value of the products severed, the proportionate parts of the total tax due by the respective owners of the natural resources at the time of severance."

doctrine, held that a soldier, upon filing an application for a specific tract of land, acquires an equitable title thereto and that "when the patent issued it related back to the date of the application". In that case, the court said of the doctrine of relation:

> " * * * we consider the question settled in this state that when patent issues it furnishes evidence of title in the patentee from the very inception of the proceedings to acquire title."

Another situation in which the doctrine of relation back to protect an interest, which is dependent upon an antecedent right plays a large part, is in the acquisition of title by adverse possession. It is settled law that on the expiration of the limitation period the disseizor becomes possessed of a vested right or title, and that that title relates back to the inception of his possession. It is said that his title is as effective as if there had been a formal conveyance.

This court, in Counce v. Yount-Lee Oil Co., 87 F.2d 572, 576, fully discussed the relation back principle, applying it there to defeat actions brought for trespass with respect to oil taken from the land before the limitation claim had ripened. In that case we said:

> " * * * The principle of relation is a comprehensive and familiar one in the law of real property. It treats one ousted from possession who has made re-entry, as by relation in continuous possession. * * * It gives the owner of an inchoate title when his title has ripened, title as from the beginning."

So here, when the long and heated struggle over the title and right to possession of the land, which had been waged between the government and the state, came to an end in Public Law 31, the state and appellants, as its lessees, found themselves in one of two positions equally favorable in law. By virtue of the act which nullified the theory on which the opinion and decree of the Supreme Court had been based, they must be held, notwithstanding the opinion of the Supreme Court, to have always and at all times had the title and right of possession, or, if the passage of Public Law 31, which brought the long struggle to an end, is to be regarded as then conferring title on them, this title, by the very terms of the Act declaring and establishing it, related back so as to confirm and maintain the possession and title of State and lessee as good from the beginning.

■ The collector, on his part sticking stoutly to his knitting, is here urging upon us, as he did upon the court below, that all that there is in this case is that appellants, as lessees, whose position has not been disturbed, are endeavoring to dispute their own and their lessor's title and right of possession, and that it is settled law that they may not do this, or refuse to discharge any of the obligations imposed upon them by or in connection with their operations as lessees. In support he cites and quotes fully from Stinson v. Marston, 185 La. 365, 169 So. 436; Rector v. Gibbon, 111 U.S. 276, 4 S.Ct. 605, 28 L.Ed. 427; Sabine Lumber Co. v. Broderick, 5 Cir., 88 F.2d 586; Brian and Brian v. Shad, La.App., 186 So. 766.[5]

In addition, the collector insists that the proviso of Public Law 31, requiring lessees to pay "all rents, royalties, *and other sums* payable between June 5, 1950, and the effective date hereof, under such lease *and the laws of the State * * *"* (emphasis supplied), affirmatively obliges appellants to pay the severance tax. So insisting he scouts as entirely unreasonable appellants' efforts to distinguish between the retroactive, the relation back, the nunc pro tunc, effect of the Submerged Lands Act on their ownership and appropriation of the severed oil and

---

**5.** To these may be added Kinney v. Millsap, 5 Cir., 71 F.2d 578, a suit for breach of warranty in which this court held that where the evidence showed that the grantee had, through his attorney, brought about the breach of warranty by stirring up an adverse claim, he could not recover for the breach.

gas, severed and appropriated by them to their own use in that period and their effect on the severance tax due from them for severing it.

He further point out that considerations of law, justice, and common sense unite to prevent appellants from rejecting the burden of the nunc pro tunc or relation back effect of the Act in respect to the severance tax, while at the same time accepting and retaining the benefits of the Act in respect to the oil and gas severed and appropriated by them, and of the State's services and efforts in obtaining its passage. So pointing appellee insists that by their conduct throughout this whole proceeding, in adopting, if not espousing, the State's actions in these proceedings and continuing to take and appropriate the oil as their own, appellants are completely estopped now to claim for the United States an exemption it does not and never did claim, or to say otherwise, of the oil taken and appropriated by them as their own, than that it is, and at all times has been, theirs for all purposes, including the obligation by them to pay severance taxes thereon.

We find ourselves in complete agreement with appellee's views. Indeed, in the light of the overall history of the submerged lands controversy, it is difficult to understand how appellants can seriously put forward a contention so lacking not only in simple justice but so contrary to the essential facts of the case and to the established law governing situations of this kind.

This contention, if we understand it, is that, as the final result of the long drawn out struggle in which the State, as appellants' lessor, has found itself enmeshed, appellants find themselves fully confirmed, as from the beginning, in their title to all that they had when the struggle began and to all the oil and gas they have taken out during its continuance, and, in addition, find themselves enriched at the expense of the State by a windfall of exemption from severance taxes on the severed minerals. We are in no doubt that their claim, that, though the United States and the State have brought their struggle to a close by an agreement which fully recognizes the title of the State and its lessees and fully restores the status quo as from the beginning, the appellants may take all the advantages of this recovery and in addition obtain a windfall of more than $66,-000, is a claim to unjust enrichment without support in equity or in law.

The judgment was right. It is affirmed.