Bywater Sales and Service Co., Inc. v. Commissioner. Nils Wirstrom and Wandalea Wirstrom v. Commissioner.
Bywater Sales & Service Co. v. Commissioner
Docket Nos. 1004-63, 1005-63.
United States Tax Court
T.C. Memo 1965-160; 1965 Tax Ct. Memo LEXIS 171; 24 T.C.M. (CCH) 849; T.C.M. (RIA) 65160; June 16, 1965
*171 Nils Wirstrom owned the controlling stock of two corporations: Bywater, which sold various products including a corrosion-preventive material, and Corrosion, which applied the material to steel structures. Bywater advanced funds to Corrosion for acquiring equipment. Due to unanticipated developments, the market for the corrosion-preventive collapsed and Corrosion sustained losses. Bywater took over Corrosion's assets for a price in excess of their adjusted basis to Corrosion and sold them at a loss, claiming deductions for depreciation and losses on sale based on the price to Bywater. Bywater paid some personal expenses of Wirstrom and paid him compensation greatly in excess of that of any prior year. Held: (1) Respondent's disallowance of deductions for depreciation and losses on sale of assets transferred from Corrosion is sustained; (2) Amounts of personal expenses of Wirstrom paid by Bywater determined; (3) Respondent's disallowance of unreasonable compensation is sustained; (4) Amounts disallowed to Bywater as deductions for business expenses and unreasonable compensation represent constructive dividends to Wirstrom; and (5) Amounts disallowed to Bywater as deductions for losses *172 on sale of equipment do not represent constructive dividends to Wirstrom. Hilary J. Gaudin, Hibernia Bank Bldg., New Orleans, La., for the petitioners. Bruce Hallmark, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in the income taxes of the petitioners as follows: Docket No.
Petitioner
Year
Amount
1004-63
Bywater Sales and Service Co., Inc.
F/Y ended
4/30/58
$ 8,171.03
Bywater Sales and Service Co., Inc.
F/Y ended
4/30/59
16,221.14
1005-63
Nils Wirstrom and Wandalea Wirstrom
1957
601,47
Nils Wirstrom and Wandalea Wirstrom
1958
9,889.08
The issues in the case of the corporate petitioner are (1) whether it is entitled to deductions claimed for depreciation and losses on sales *173 of equipment transferred to it; (2) whether certain expenditures claimed as deductions on its returns and disallowed by respondent were paid for the personal benefit of its controlling stockholder; and (3) whether the compensation paid its controlling stockholder for the fiscal year ended in 1959 was reasonable. The issue in the case of the individual petitioners is whether certain of the amounts disallowed to the corporation as deductions represent distributions of corporate earnings to the principal stockholder. Some facts are stipulated. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Nils Wirstrom and Wandalea Wirstrom are husband and wife. They reside in New Orleans, Louisiana. They filed joint Federal income tax returns for the calendar years 1957 and 1958. Bywater Sales and Service Co., Inc., hereinafter referred to as Bywater, is a corporation organized in May 1950 under the laws of Louisiana. It filed corporation income tax returns for the fiscal years ending April 30 in 1952 through 1959. Corrosion Protection Service, Inc., hereinafter referred to as Corrosion, is a corporation organized in November *174 1954 under the laws of Louisiana. It filed corporation income tax returns for the fiscal years ending September 30 in 1955 through 1958. All the foregoing returns were filed with the collector or the district director of internal revenue at New Orleans, Louisiana. Nils Wirstrom, hereinafter referred to as the petitioner, was born in Sweden. He attended marine engineering school and went to sea as a marine engineer. During World War II he was in Australia and there learned of a sodium silicate material used as a coating for steel to protect it against corrosion by sea water. Later he became a naturalized citizen of the United States. He secured a franchise to sell this material in Louisiana, Mississippi, and southern Arkansas. He was in business in partnership with Walter Mercier until 1950, when Bywater was organized with petitioner and Mercier as equal stockholders to sell this material under the franchise. Later, petitioner acquired Mercier's interest. In the fiscal year ending in 1958 petitioner owned all the stock of Bywater. In the fiscal year 1959 he owned 89 percent of its stock. Bywater sold the material to oil companies and others for application on steel rigs used in *175 offshore drilling in the Gulf of Mexico and on barges or other vessels exposed to corrosion by salt water, and also on storage tanks for oil or gasoline. The petitioner experienced difficulty in having this product properly applied. Application required preparation by sandblasting and then coating the steel with the product to a precise thickness. Petitioner organized Corrosion in 1954 to perform the function of applying the coating material to structures in a proper manner. Petitioner owned the major portion of the stock of Corrosion. Bywater owned none. Corrosion's initial paid-in capital was $2,250. Bywater loaned funds to Corrosion from time to time for the purchase of equipment or payment of expenses. Notes were given for such advances, and interest was charged at the prevailing bank rates. Corrosion acquired equipment for applying coatings. The equipment included compressors, sandblasters, barges, trucks, loading machines, and other items. Corrosion entered into contracts for application of coatings with Bywater's customers and with other companies selling coatings. In 1957 Corrosion encountered operating difficulties in that it could not secure supervisory personnel. Also *176 at that time most of the oil producers which were engaged in offshore drilling in the Gulf substantially reduced their operations because of uncertainties of rights in view of a Supreme Court decision relating to jurisdiction over offshore rights, referred to herein as the Tidelands case. This reduction of drilling operations brought an end to Corrosion's business and opportunity for profit. Bywater, which had other products to sell, continued to operate at a profit. As of April 30, 1957, Corrosion was indebted to Bywater for advances to the extent of about $66,500. As of September 30, 1957, Corrosion transferred to Bywater certain of the equipment owned by it. On or about April 30, 1958, Corrosion transferred to Bywater the remainder of its equipment. Bywater assumed any existing indebtedness on such equipment. Bywater was able to rent some of the smaller items but there was no demand for the larger pieces. Bywater sold this equipment within a few months after the transfers. Corrosion reported net income on its returns for the fiscal years ending in 1955 and 1956 in the amounts of $1,774.97 and $433.94, respectively. It reported losses in the returns for the fiscal years ending *177 in 1957 and 1958 of $3,459.05 and $4,054.71, respectively. On its return for the fiscal year ended in 1957, Corrosion reported the sale of assets transferred to Bywater, including a tractor and trailer, two trucks, six sandblast machines, a compressor, heater, transformer, and motors. These items were shown as having a total cost of $59,851.86 on which depreciation of $10,683.45 had been claimed, and were transferred for the price of $50,250.95 credited upon its debt to Bywater, plus assumption of $14,054.60 owed on certain of the items. On its return for the fiscal year ended in 1958, Corrosion reported the sale of assets to Bywater, including a compressor, sandblast machines, furniture, and accounts receivable, having a cost of $27,927.51 on which depreciation of $3,155.57 had been claimed. The selling price was $24,890.03. Bywater claimed deductions for depreciation and for losses on sale of the equipment transferred from Corrosion. The equipment transferred on September 30, 1957, had an adjusted basis to Corrosion of $49,168.41. It was transferred to Bywater at the price of $64,305.50. Bywater assumed a liability of $14,054.60 owed by Corrosion on the equipment and cancelled *178 $50,250.90 of the amount owed by Corrosion for advances. The equipment transferred on April 30, 1958, had an adjusted basis to Corrosion of $2,850.15, and was transferred at the price of $3,850.15, which amount was credited on the remaining indebtedness from Corrosion to Bywater. Bywater claimed depreciation deductions on the transferred equipment in the amounts of $8,391.31 in the fiscal year 1958 and $10,185.84 in the fiscal year 1959. The equipment transferred from Corrosion and sold by Bywater in the fiscal year 1958 was sold for approximately $19,885. The equipment so transferred and sold in the fiscal year 1959 was sold for $13,365.15. Bywater claimed losses from sales of this equipment in the amounts of $9,791.70 and $5,632.94 in fiscal 1958 and 1959, respectively. The fair market value of the transferred equipment at the time of the transfers to Bywater was not in excess of $33,250.15. The amounts claimed by Bywater as deductions for depreciation and losses on sale of the equipment transferred from Corrosion which were disallowed by respondent in the notice of deficiency and the amounts now conceded by the respondent to be the correct amounts to be disallowed are as follows: *179 Fiscal
Depreciation
Loss on Sale
Year
Disallowed
Correct
Disallowed
Correct
1958
$ 8,391.31
$ 8,391.31
$13,760.41
$9,791.70
1959
10,277.04
10,185.84
5,632.94
5,632.94
On its returns for the fiscal years ended in 1958 and 1959 Bywater claimed the following amounts as deductions for business expenses, of which the respondent disallowed the amounts as shown: Amount
Amount
Item
Claimed
Disallowed
Year ending April 30, 1958: Sales promotion
$ 2,518.93
$ 431.78
Entertainment
2,497.19
116.23
Traveling expense
7,537.68
1,666.03
Auto expense: gas and oil
3,131.29
300.00
Auto and truck repairs
1,248.22
300.00
Telephone: local
781.77
89.16
Miscellaneous expense
116.84
102.43
Total for year ending April 30, 1958
$17,831.92
$3,005.63
Year ending April 30, 1959: Sales promotion
$ 2,414.47
$1,755.37
Entertainment
4,330.45
555.73
Travel
10,379.07
470.43
Auto expense: gas and oil
2,858.39
300.00
Auto repairs
1,883.91
300.00
Telephone
2,380.05
89.16
Miscellaneous expense
214.98
159.15
Total for year ending April 30, 1959
$24,461.32
$3,629.84
The amounts claimed as deductions *180 were in fact expended. Respondent prorated the disallowed amounts equally to the 12 months in each of Bywater's fiscal years and included each such monthly amount in the appropriate calendar year of the Wirstroms; thus, the amounts disallowed to Bywater and included in the Wirstroms' income were as follows: Bywater business deductions disallowed
Inclusions in Wirstrom income as dividends
Year ending 4/30/58
$3,005.63
Calendar year 1957
$2,003.75
Calendar year 1958
1,001.88
Year ending 4/30/59
3,629.84
Calendar year 1958
2,419.89
The $116.84 and $214.98 deductions for "miscellaneous expense" included the expense of bricks delivered to and used at the Wirstrom residence. These expenses were not business expenses of Bywater but were concededly personal expenses of the Wirstroms paid by Bywater. Some of the drilling installations which used the product sold by Bywater were 30 miles or more offshore in the Gulf of Mexico. In visiting these rigs petitioner found it necessary to hire a boat of substantial size. He invited representatives of prospective customers to go with him on these trips and see the product in actual use. While on such *181 trips he and his guests would take the opportunity to do some fishing. Bywater paid the expenses of such trips as sales promotion expenses. The deductions claimed by Bywater for sales promotion included the cost of a watch for Wandalea Wirstrom, $215, and cuff links for Nils Wirstrom, $200. The deduction for traveling expenses for the fiscal year 1958 included the expenses of a trip to Cuba in December 1957 for Nils and Wandalea Wirstrom. The deductions for automobile expense and auto and truck repairs included the expenses of operating and repairing four passenger automobiles in the fiscal year 1958 and seven in the fiscal year 1959. None of these were owned by petitioner personally. One or more of these were used by petitioner for travel between his residence and Bywater's place of business, or for trips to business locations from his residence or from Bywater's offices. The deductions claimed for telephone expenses included the telephone at petitioner's residence which was used in part for personal calls. The balance sheets of Bywater's tax returns reported assets and liabilities as follows: Fiscal Year Ending April 30
1957
1958
1959
Cash
$ 27,316.65
$ 8,825.06
$ 4,310.11
Notes and accounts receivable
93,193.77
28,469.58
57,617.99
Inventories
15,180.77
16,970.81
19,629.51
Depreciable assets less reserve
33,745.99
40,426.14
15,937.56
Other assets
3,043.92
2,587.31
2,441.23
Total assets
$172,481.10
$97,278.90
$99,936.40
Accounts and notes payable
$108,252.18
$40,956.30
$45,732.37
Accrued expenses
11,909.19
2,128.12
1,440.37
Dividend payable
500.00
1,000.00
Capital stock
26,200.00
50,000.00
50,000.00
Earned surplus
26,119.73
3,694.48
1,763.66
Total liabilities
$172,481.10
$97,278.90
$99,936.40
*182 Bywater's tax returns showed the following items, among others: Net Sales
Other
F/Y
or Total
Wirstrom's
Salesmen's
Taxable Income
Ending
Income
Compensation
Salaries
or (Loss)
1954
$ 79,404.02
$ 7,738.00
$ 9,372.00
$ 3,298.65
1955
164,857.79
29,685.00
9,604.98
10,988.17
1956
256,965.49
20,750.00
12,953.42
2,707.99
1957
330,871.65
20,400.00
12,887.50
26,226.74
1958
379,840.49
13,400.00
12,343.73
2,678.21
1959
552,141.36
49,162.42
17,261.76
(890.66)
The individual petitioners' tax returns reported salary of Wirstrom from Bywater of $20,400 in 1957 and $26,064.54 in 1958, and salary from Corrosion of $2,100 in 1957. Reasonable compensation for the services performed by petitioner for Bywater during its fiscal year 1959 was $26,000. The further amount paid him by that corporation in that year was a distribution of corporate earnings. Opinion The petitioner had developed a substantial business which he operated through two controlled corporations - Bywater, which sold, among other products, a material to protect steel from the corrosive effects of sea water, and Corrosion, which carried out contracts to apply *183 this material in a proper manner. One of the principal fields for the application of this material in the petitioner's territory was upon steel rigs erected by oil companies for offshore drilling in the Gulf of Mexico. It appears from the testimony that the decision of the Supreme Court, herein referred to as the "Tidelands" case, United States v. Louisiana, 339 U.S. 699 (1950), and 340 U.S. 899 (1951), resulted several years later, in 1957, in a sudden shutdown of drilling operations by most of the major oil companies engaged in such drilling, with the result that the market for the corrosion-preventive material collapsed. The consequence was that Corrosion was left with a substantial amount of application equipment and no work, while Bywater could continue in business through its sales of other products. The petitioner had caused Bywater to advance funds to Corrosion for the purchase of equipment and payment of expenses until the latter owed the former about $66,500. Bywater took over the equipment, assumed the indebtedness on it, and cancelled the obligation of Corrosion for the advances. Bywater sold this equipment within a few months. Corrosion had operated *184 at a loss in its fiscal years ended in 1957 and 1958 while Bywater had operated at a profit. As the respondent points out, the transfer of the equipment to Bywater was apparently designed to result in certain tax benefits to Bywater. While Bywater owned this equipment, it was intended that deductions for depreciation would be claimed which would result in a tax benefit not available to Corrosion. Actually, the equipment was not used in Bywater's trade or business nor was it held for the production of income to Bywater, and therefore would not qualify as depreciable assets of Bywater under section 167, Internal Revenue Code of 1954. As the market for the equipment had collapsed, it was foreseen that a loss would result on its sale and it was intended that Bywater have the tax benefit of the loss which could not benefit Corrosion in view of its operation at a loss. The transfer to Bywater was made at a price exceeding Corrosion's adjusted basis so that the depreciation to be claimed and the anticipated loss on the sale by Bywater would be greater. Bywater acquired Corrosion's equipment for $68,155.65 and sold it for approximately $33,250 within a few months after *185 acquisition. In the meantime Bywater claimed deductions for depreciation on this equipment based on the price allowed Corrosion and, after the sale, claimed deductions for the loss based upon the cost to Bywater. Since both corporations were controlled by petitioner, the validity of the transaction is subject to scrutiny. Had the corporations not been under common control the transfer would undoubtedly have been made at fair market value. Had the transfer been a bona fide transaction, Bywater's correct basis in the equipment would be only the fair market value at the time, and that value would not be in excess of the amount for which the equipment was soon thereafter sold. Mountain Wholesale Co., 17 T.C. 870 (1951); Investors Diversified Services, Inc., 39 T.C. 294 (1962), affd. 325 F. 2d 341 (C.A. 8, 1963). The respondent correctly disallowed deductions for depreciation and losses on sale of this equipment. These amounts, as adjusted in accordance with respondent's concessions, are shown in our findings of fact. The respondent disallowed portions of amounts claimed as deductions on Bywater's tax returns for sales promotion, entertainment, *186 traveling expense, auto expense, auto and truck repairs, telephone expense and miscellaneous expense in each of the taxable years. Bywater concedes that the deduction claimed under miscellaneous expense for bricks used in the personal residence of the Wirstroms was erroneous, but disputes the other items disallowed. The testimony of Wirstrom showed that the automobiles owned by Bywater were principally used in its business but that to some extent he used them in travel between his residence and the corporation's place of business. Also, the telephone expense paid by the corporation included the residence telephone of the Wirstroms, which was used to some extent for personal purposes. The disallowance of a part of the automobile expense, auto and truck repairs, and part of the telephone expense was warranted, and it has not been shown that the respondent erred in determining the amounts to be disallowed. Respondent disallowed travel expense for the fiscal year 1958 in the amount of $1,666.03. Petitioner testified that this item was for a business trip to Cuba which he made in December 1957 and that his wife also made the trip to help entertain and to assist him in understanding *187 English, and that as a result of this trip he secured a considerable amount of business. Also, he made a trip to Acapulco, Mexico, for business purposes in the same fiscal year 1958. An item of $470.43 for travel expense claimed by Bywater for the fiscal year 1959 was also explained as similar travel to secure business for Bywater. In our opinion, these items have been substantiated by the testimony. We find that these travel expenses are allowable deductions. Part of the sales promotion expense claimed was related to fishing trips on which prospective buyers were entertained. Petitioner said that it was necessary to hire a large boat to visit offshore rigs 30 miles or more out in the Gulf and that he would take prospective buyers along to see the coating product in use on such rigs and would entertain them by including fishing while on the water. The expenses claimed for entertainment which were disallowed appear to be for the same or similar purposes. These are, in our opinion, legitimate business expenses for sales promotion or for business entertainment, and we find that respondent erred in disallowing the amounts claimed, except for the amounts of $215 paid for a watch for Wandalea *188 and $200 for cuff links for petitioner, as gifts from the corporation. These amounts were correctly disallowed as being personal expenses of the controlling stockholder. The record does not show the year in which these items were paid, but adjustment may be made under Rule 50. Petitioner drew compensation from Bywater in the amount of $49,162.42 in the corporation's fiscal year ended in 1959. The respondent determined that $26,000 was reasonable compensation for petitioner's services in that year and disallowed the amount in excess of that figure as representing a distribution of corporate earnings to the principal stockholder. Bywater contends that the success of the company was due to petitioner's efforts; that his compensation in earlier years was not commensurate with the services rendered; that the increase in sales from some $384,000 to $564,000 in the fiscal year 1959 was due to him; that the compensation was voted him in the form of a salary and a bonus of 10 percent of sales; and that such compensation was reasonable. The corporation distributed no formal dividends before its fiscal year ended in 1958 and only token dividends of $500 in that year and $1,000 in the following *189 year. The compensation paid for the fiscal year 1959 was vastly greater than in any prior year, and it absorbed so much of the corporate earnings that no taxable income remained. Petitioner's duties were neither increased nor changed. While he testified that the corporation had difficulty in getting salesmen, it paid more in other salesmen's salaries in the fiscal year 1959 than in any earlier year. The additional amount was authorized as a bonus of 10 percent on sales to be paid to petitioner alone and not to other salesmen, and was based on all sales rather than his sales alone or on sales of the coating product alone, which was his special sales field. The bonus payments were so arranged that the total of $38,562.42 paid in the corporation's fiscal year 1959 was paid $12,464.54 in 1958 and $26,097.88 in 1959 to reduce the tax effect to petitioner, who filed returns on a calendar year basis. There was no evidence, beyond petitioner's self-serving testimony, that the total compensation was reasonable. Respondent's determination allowing $26,000 as reasonable compensation has not been shown to be erroneous. Expenditures made by a corporation for the personal benefit of its controlling *190 stockholders are distributions of corporate earnings, includible in the income of the stockholders and not deductible by the corporation. Challenge Manufacturing Co., 37 T.C. 650, 663, and cases there cited. The portions of such deductions claimed by Bywater which were disallowed by respondent as nonbusiness expenses and unreasonable compensation, to the extent we have sustained the disallowances, represent constructive dividends to petitioner. Respondent determined that petitioner also received a constructive dividend from Bywater in 1958 in the amount of $18,940.35. The argument is that if the losses on the property transferred from Corrosion are of no benefit to Bywater, since the claim is here disallowed, then the only possible beneficiary was Corrosion, and such benefit is attributable to petitioner as its owner. Respondent has not explained to our satisfaction how the disallowance to Bywater of the loss claimed can be translated into income to petitioner. The argument disregards the corporate entities and there is no showing that petitioner has derived an economic benefit. Respondent's determination is not sustained. Decisions will be entered under Rule 50. *191