STATE of Alaska, Appellant,

v.

Harold KALVE, Appellee.

No. A–7394.

Court of Appeals of Alaska.

Sept. 29, 2000.

Deborah L. Greenberg and Lance Nelson, Assistant Attorneys General, Anchorage, and

Bruce Botelho, Attorney General, Juneau, for Appellant.

James T. Brennan, Hedland, Brennan, Heideman & Cooke, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## O P I N I O N

STEWART, Judge.

Harold Kalve is an Alaska commercial fisherman. He holds an individual fish quota (IFQ) permit that was issued under a federal IFQ management program for sablefish pursuant to the Magnuson–Stevens Fishery Conservation Act (the Magnuson Act).[1] In accordance with federal regulations implementing the IFQ management program, Kalve's individual annual quota limit was set by the amount of sablefish that he caught from the "IFQ regulatory area," which by definition included federal waters and certain state waters.[2]

In April 1998, the State of Alaska, by emergency regulation, closed its waters to sablefish fishing. Although Kalve was aware that state waters had been closed to sablefish fishing, he went fishing in state waters on June 23, 1998, and landed 120 pounds of sablefish. Kalve was issued a citation for illegal retention of sablefish taken from closed state waters. Kalve moved to dismiss the charges against him. The district court granted Kalve's motion after concluding that the "paramountcy doctrine" established federal supremacy in state waters. The State now appeals. Because we conclude that the

paramountcy doctrine is inapplicable to this case and that the State's emergency regulation was not preempted by federal law, we reverse.

*Does the Paramountcy Doctrine Apply?*

The paramountcy doctrine is essentially derived from four U.S. Supreme Court cases,[3] where "the federal government and various coastal states disputed ownership and control of the territorial sea and the adjacent portion of the [outer continental shelf]."[4] These cases established that the federal government has paramount rights in lands and natural resources in the offshore seabed as an incident of national sovereignty. The district court relied on these cases, and on the decision in *Native Village of Eyak v. Trawler Diane Marie, Inc.,*[5] in dismissing the State's charges against Kalve.

■ But although the federal government might lawfully exercise sole authority over the offshore seabed, Congress has chosen to share that authority. In 1953, Congress passed the Submerged Lands Act.[6] This legislation gave coastal states control over the submerged lands beneath the three-mile zone of their territorial waters, and the authority to regulate the natural resources within those waters.[7] Thus, Kalve's case raises no issue of federal paramountcy.

Kalve concedes this point. However, he now raises a different argument based on the supremacy clause that the district court did not rely on—the provision of the federal constitution declaring that when federal law and state law are in conflict, federal law shall govern.[8] In particular, Kalve argues that the State's emergency regulation closing the

1. 16 U.S.C. §§ 1801–1883 (1994 & West Supp. 2000).

2. *See* 50 C.F.R. §§ 679.2, 679.4(d)(4)(i).

3. *See United States v. Maine,* 420 U.S. 515, 95 S.Ct. 1155, 43 L.Ed.2d 363 (1975); *United States v. Louisiana,* 339 U.S. 699, 70 S.Ct. 914, 94 L.Ed. 1216 (1950); *United States v. Texas,* 339 U.S. 707, 70 S.Ct. 918, 94 L.Ed. 1221 (1950); *United States v. California,* 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947).

4. *Native Village of Eyak v. Trawler Diane Marie, Inc.,* 154 F.3d 1090, 1092 (9th Cir.1998), *cert. denied,* 527 U.S. 1003, 119 S.Ct. 2337, 144 L.Ed.2d 234 (1999).

5. *Id.*

6. 43 U.S.C. § 1301 *et seq.*

7. *See* 43 U.S.C. § 1311(a).

8. *See* U.S. Const. art. VI: "This Constitution, and the laws of the United States which shall be made in pursuance thereof ... shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

sablefish season is in direct conflict with certain federal sablefish regulations enacted pursuant to the Magnuson Act.

■ (Although Kalve raised this argument in the district court, the district court did not rely on this theory when it dismissed the charge against Kalve. Nevertheless, because Kalve is the appellee, he may argue for affirmance of the district court's decision on any legal theory revealed by the existing record.[9])

*Is the State's Sablefish Regulation Preempted by Federal Law?*

■■ Federal law can preempt state law in three ways:

First, Congress may expressly declare that state law is preempted. Second, state law is preempted if Congress intends the federal government to occupy a field exclusively. Third, federal law preempts state law if the two actually conflict." [10]

Generally, federal regulations should not preempt state regulations absent "persuasive reasons." [11] As the Alaska Supreme Court has recognized:

When considering preemption, "[courts] start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." [12]

With these principles in mind, we next determine whether any of the above three grounds for preemption exist in Kalve's case. Kalve does not claim that he can satisfy the first prong of the above test—that the Magnuson Act expressly preempts state regulation of a fishery within its boundaries. Indeed, the Magnuson Act does just the opposite—it expressly recognizes the State's authority over its territorial waters:

Except as provided in subsection (b) of this section, nothing in this chapter shall be construed as extending or diminishing the jurisdiction or authority of any State within its boundaries.[13]

Kalve also concedes that the second prong— that Congress intended the federal government to occupy the field exclusively—does not apply to his case. We agree that Congress's express recognition of the State's jurisdiction over its territorial waters demonstrates that Congress did not intend to occupy the fisheries field exclusively.

■ Kalve relies on the third prong of the test in support of his argument that we should affirm the district court's dismissal of the charges against him. Specifically, Kalve argues that the State's sablefish regulation is preempted by federal law because it directly conflicts with the federal regulations implementing the federal IFQ sablefish program. In support of his argument, Kalve relies on the federal definition of IFQ regulatory area:

IFQ regulatory area means: ... (2) with respect to IFQ sablefish, any of the three regulatory areas in the [Gulf of Alaska] ... and all waters of the State of Alaska between the shore and the inshore boundary of such regulatory areas and sub-areas, except waters of Prince William Sound and areas in which sablefish fishing is managed under a State of Alaska limited entry program.[14]

Kalve also relies on two other federal regulations. The first authorizes an IFQ permit holder to harvest IFQ sablefish from a specified IFQ regulatory area at any time during an open fishing season.[15] The second provides that fishing for sablefish in any IFQ regulatory area may be conducted in any fishing year during the period specified by

9. *See International Investors v. Business Park Fund*, 991 P.2d 219, 226 (Alaska 1999).

10. *Totemoff v. State*, 905 P.2d 954, 958 (Alaska 1995).

11. *Webster v. Bechtel, Inc.*, 621 P.2d 890, 898 (Alaska 1980) (quoting *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142 [83 S.Ct. 1210, 10 L.Ed.2d 248] (1963)).

12. *Totemoff*, 905 P.2d at 958 (quoting *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 605 [111 S.Ct. 2476, 115 L.Ed.2d 532] (1991)).

13. 16 U.S.C. § 1856(a).

14. 50 C.F.R. § 679.2.

15. *See* 50 C.F.R. § 679.4(d)(4)(i).

the Regional Administrator of the National Marine Fisheries Service.[16]

■ The parties agree that actual conflict between state and federal law arises when compliance with both federal and state law is physically impossible or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of federal law." [17] We now examine whether there is actual conflict between the state and federal regulatory schemes.

Kalve argues that the State's closure of the sablefish fishery stood as an obstacle to the accomplishment and purpose of the federal IFQ management program and made it physically impossible for him to comply with the federal regulations that authorized him (as an IFQ holder) to fish for sablefish within the IFQ regulatory area—a 200-mile zone that included the three-mile zone of state waters. But the federal regulations did not *require* Kalve to fish in state waters; rather, those regulations *authorized* him to fish there. Thus, the true question is the intended scope of that federally granted authority. Did the United States Department of Commerce intend to authorize IFQ holders to harvest sablefish in these waters, despite any contrary state law? Or did the department intend to authorize IFQ holders to fish for sablefish so long as their fishing did not conflict with applicable state law?

We conclude that the federal regulations are not intended to supplant applicable state regulations. We reach this conclusion based on another section of the Magnuson Act regulations, entitled "Relation to Other Laws." One provision of that section declares that "conservation and management of groundfish in waters of the territorial sea ... of the State of Alaska" are governed by 5 AAC 28 and by Title 16 of the Alaska Statutes.[18] In other words, the federal law is intended to be a concurrent regulation of the sablefish fishery in Alaska waters, not an exercise of exclusive control. Kalve was obligated to

conform his conduct to both the federal and the state sablefish regulations.

The judgment of the district court is REVERSED; the charge filed against Kalve is reinstated.

sablefish they catch before they have satisfied their quota. *See* 50 C.F.R. § 679.7(f)(11). But the regulation suspends this prohibition "in waters within the State of Alaska [when] discard of sablefish is required under [the] laws of the State of Alaska." *Id.* 679.7(f)(11)(ii).

---

16. *See* 50 C.F.R. § 679.23(g)(1).

17. *Quinn v. Alaska State Employees Ass'n*, 944 P.2d 468, 471 (Alaska 1997).

18. 50 C.F.R. § 679.3(b). Federal law generally prohibits IFQ permit holders from discarding the